## SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* HEFLIN.

No. 12736. June 15, 1939.

*Robert G. Plunkett* and *R. F. Scarborough*, for plaintiff in error.
*Beck, Goodrich & Beck*, contra.

JENKINS, Justice. 1. While it is the general rule of law that knowledge of a fact is a necessary ingredient in the application of the doctrine of waiver or estoppel, and consequently a person is not ordinarily estopped by virtue of the existence of a fact of which he has no actual or constructive knowledge (*United Benevolent Society* v. *Freeman,* 111 *Ga.* 355 (3), 359, 36 S. E. 764; *German American Mutual Life Association* v. *Farley,* 102 *Ga.* 720 (3), 742, 29 S. E. 615), there is nothing which would ordinarily prevent parties from contracting with respect to this rule of law, so as to prevent lack of knowledge of a fact from avoiding a waiver or estoppel. This is true for the reason that generally parties may agree to waive contract, statutory, or other rights. The exception is that the law does not permit a person to covenant against his own fraud or to contravene other rules of public policy. 12 Am. Jur. 682, 683 (§§ 181, 182), et seq.

2. Policies of insurance, being prepared and written by the insurer, are to be construed strictly in favor of the insured and against the insurer. *Benevolent Burial Association* v. *Harrison,* 181 *Ga.* 230, 239 (181 S. E. 829), and cit.

3. While great caution is necessary in applying the maxim, "expressio unius est exclusio alterius," where an insurance association in preparing and writing a contract of insurance has provided that it shall be forfeited by non-payment of premiums when due, but where under the terms of the policy the right is reserved for the insured to reinstate the policy within a prescribed period after default, provided that payment of the reinstatement premium shall be taken as a warranty that he is in good health and will so remain for 30 days thereafter, and where the insurer, without relying upon the general rule of law with respect to estoppel, has seen proper to provide in the contract prepared by it that the receipt and retention of the particular reinstatement premium "shall not constitute a waiver or an estoppel upon the association," but has not provided that the receipt and retention of subsequently accruing premiums shall not so operate, the maxim that the express mention of one thing implies the exclusion of another should be given application. Suppose an insurance policy, as this one did, provided that the acceptance of premiums would not estop the insurer from contesting the validity of the policy for two years from its issuance, would it not be plain that the insurer would be estopped from contesting

its validity on account of its ignorance of the facts in accepting premiums after it had been in force for two years? Why adopt a different rule as to the provisions relating to reinstatement, when every reason and argument would apply with equal force to each situation? Applying this maxim, the result is that the unconditional acceptance of premiums accruing *after* the 30-day period will operate to estop the association from raising the question that the insured did not remain in good health during the 30-day period, and that this fact was unknown to the association at the time of its acceptance and retention of the subsequent premiums. See Broom's Legal Maxims (8th ed.), 504 et seq.; 25 C. J. 220, and cit. The member with whom the association contracted was thus authorized to construe the reasonable intendment of the reinstatement provision to be that the only penalty which the association saw proper to impose on a member was that all protection under the policy was suspended during the 30-day period following his reinstatement, with the result that the payment of subsequently accruing premiums would operate to restore him to the same status as existed prior to his default. Accordingly, under this interpretation of the policy, where after the payment in good faith of the reinstatement premium, but during the 30-day period immediately thereafter, the member became in bad health, irrespective of whether or not the association would be compelled to accept the payment of subsequently accruing premiums, the fact that it did so would operate to estop it from claiming that the policy was never legally reinstated.

4. Nothing is here decided contrary to what was ruled by this court in *Sovereign Camp W. O. W.* v. *Hart,* 187 *Ga.* 304 (200 S. E. 296). The controlling question decided in the instant case is not whether the policy had become forfeited by failure to pay a premium when due. This decision assumes that such was the case. The proposition here dealt with turns solely upon the validity of the member's reinstatement. In the *Hart* case the question was whether the policy had become forfeited. The beneficiary contended that the existence of a custom of the association in accepting belated payments should be made to operate as a waiver or estoppel, so as to prevent the member from being held in default and the policy therefore forfeited. The association contended, that, since the policy provided that belated premiums should be applied toward

the reinstatement of the policy in accordance with the terms of the reinstatement provisions, no custom with respect to the acceptance of belated premiums could be taken to prevent an automatic forfeiture, and that consequently the association was not estopped from pleading a forfeiture of the insurance by reason of any such custom. The decision was in favor of the association's contention; and it was held that in view of the policy provision with reference to the application of belated premiums, the existence of any custom with respect to the acceptance of belated premiums would not operate to estop the association from pleading a forfeiture of the policy; and that under the terms of the policy the only right which the member had in the payment of overdue premiums was to reinstate his policy in accordance with the terms of the contract covering reinstatement. Since in the *Hart* case no reinstatement of the policy had been made, no ruling was or could have been made as to whether the association under the terms of its policy would have been estopped, by the acceptance of subsequently accruing premiums, from disputing the validity of a reinstatement.

5. The foregoing rulings being controlling, it is unnecessary to determine other questions raised, which might be material in the absence of a contractual provision such as here existed as to waiver and estoppel, such as, how long after a conditional reinstatement of a member an insurance association might rely on his warranty of good health; whether in accepting subsequent premiums after a forfeiture and reinstatement it became the duty of the association, as the trial judge charged in this case, to make an investigation of the member's health within a reasonable time, or be bound by his reinstatement; and whether the acceptance of three subsequent monthly payments after a forfeiture, without such an investigation, authorized the jury in this case to find that the defendant had not acted within a reasonable time.

6. Under the preceding rulings, the judgment of the Court of Appeals is

*Affirmed. All the Justices concur, except Grice and Duckworth, JJ., who dissent.*