### 76955. PETERSON et al. v. LIBERTY MUTUAL INSURANCE COMPANY.
#### (373 SE2d 515)

BIRDSONG, Chief Judge.

This is an appeal from the order of the superior court granting the appellee/defendant's motion for summary judgment.

On August 18, 1986, appellant Bernice Peterson, the wife of appellant Abraham Peterson, contacted Mr. Glidewell who was an agent for the appellee, Liberty Mutual Insurance Company, in order to ob-

tain automobile insurance coverage for appellants' cars. Acting as agent for her husband, Bernice Peterson signed an application for automobile insurance and tendered a check in the amount of $159 as an advance payment thereon. She also signed certain other documents including the following acknowledgment: "I hereby acknowledge and agree that the automobile insurance I have applied for (Date) 8-18-86 from Liberty Mutual Fire Insurance Company will take effect on the ·specified date as indicated on the application after I am notified of approval by a Liberty Mutual Representative." Nothing contained in the forms, at the time she signed them, expressly provided for any earlier insurance effective date, provided that the insurance had been approved, or that an insurance binder had been issued thereon. However, the receipt for payment of $159 did contain an entry of "To be assigned" in a block entitled "Complete 15 Digit Policy No.," although this same form also had blocks entitled "Binder No." and "Effective Date," respectively, which were left blank. Bernice Peterson testified by way of deposition that, Mr. Glidewell "told me . . . he had to do a license check on my husband, and after a couple of days, then the the insurance would take effect, but I assumed I had a binder on the insurance after I walked out . . . the door, because he accepted my down payment." She also testified that Mr. Glidewell said he would notify her by mail "when I was covered," and that he would send "a letter or a policy number through the mail." Appellant Abraham Peterson testified that he let his wife make the arrangements concerning automobile insurance, and that he was not present when she talked with Mr. Glidewell. Appellant Abraham Peterson does not recall seeing the insurance forms or ever seeing any card or policy from the appellee. However, he testified that several days after his wife's return from Mr. Glidewell's office, he received a telephone call from "a man" who indicated that there was a Social Security number discrepancy that needed to be corrected and he gave him the correct information. Later he received another call from the same individual who said that his "insurance was okay," "insurance went through," "you have got insurance coverage with Liberty Mutual," or words to this effect. He does not know who the man is with whom he talked, and the record is otherwise silent either as to whom this man might be or as to what his position, if any, might be with the appellee.

Subsequently on August 30, 1986, Bernice Peterson was injured when she was struck by an uninsured motorist while she was driving one of appellant's cars. The appellants' car was damaged beyond repair. On or about September 5, 1986, appellee without explanation returned the amount of $159 to appellant Abraham Peterson. Thereafter, on or about September 23, 1986, appellee sent a letter to appellant Abraham Peterson informing him that the application for insurance had been denied.

The insurance application form signed by Bernice Peterson has a block at the bottom of the last page thereof labeled "Applicant's Authorization." Within this block is space in which the time and date when the policy is to commence can be written; this space has been left blank. At the very bottom of this same block is a space where a manager or supervisor of the appellee can sign acknowledging his review of the application. Although this space also is blank, closely adjacent thereto appears the handprinted notation "Approved by Tim Gramig on 8-15-86." This notation has been initialed by some unknown person. In addition the record contains an affidavit from the Tax Commissioner of Muscogee County who has reviewed the insurance application and asserts that based upon his experience he "would find sufficient evidence of insurance as of August 15, 1986, as shown by the approval thereon to issue a motor vehicle tag in this County."

The appellants assert three enumerated errors as follows: (1) It was error to grant summary judgment to the defendant holding that there was no genuine issue of material fact; (2) It was error for the trial court to rule as a matter of law that there is no contract between the parties; and (3) It was error to dismiss the case on its merits. We will address these three enumerations simultaneously.

On a motion for summary judgment, "the movant has the burden of showing affirmatively that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. Moreover, when the movant is the defendant, he has the additional burden of piercing the plaintiff's allegations and affirmatively negating at least one essential element of the plaintiff's case." *Burns v. Gleason*, 183 Ga. App. 245, 247 (358 SE2d 646). In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Bridges v. Interstate Truck Leasing*, 171 Ga. App. 361 (319 SE2d 531); see *Dickson v. Dickson*, 238 Ga. 672, 675 (235 SE2d 479).

Under the facts of this case, the appellants would have received the benefit of insurance coverage from the appellee only if either the appellee duly accepted appellants' application (offer) for insurance before the accident occurred or an insurance binder was in effect before and at the time of the accident.

First, regarding the tender by appellant Bernice Peterson of a check as a partial advance premium payment, " '(t)he general rule is that an application for insurance, even with the concurrent prepayment of premiums, creates no binding contract of insurance until the insurer manifests its acceptance.' " *Karp v. Western Life Ins. Co.*, 182 Ga. App. 693, 694 (356 SE2d 893); *Harrison v. American Liberty Ins.*

*Co.*, 155 Ga. App. 226 (2) (270 SE2d 389). Secondly, regarding the insurance binder issue, "[a] binder is a contract of insurance, albeit a temporary, sketchy, and informal contract, which is intended to give temporary protection pending the investigation of the risk by the insurer or until issuance of a formal policy. [Cit.] *The binder is an independent contract, separate and distinct from the permanent policy* which may be issued on the basis of the written application." (Emphasis supplied.) *Sawyer v. C & S Nat. Bank*, 164 Ga. App. 177, 181 (296 SE2d 134); see generally Jenkins & Darroch, Ga. Auto. Ins. Law, § 3-1. A binder " ' "is not a mere offer, but itself a contract — temporary, sketchy, and informal, but a contract notwithstanding." ' " *Cincinnati Ins. Co. v. Stuart*, 139 Ga. App. 80, 82 (227 SE2d 771). A binder can be oral or written, OCGA § 33-24-33; *Ray v. Ga. Farm &c. Ins. Co.*, 176 Ga. App. 776, 778 (337 SE2d 779), and " '[t]he language or conduct necessary to create the contract is simply that which is enough to show that there has been a meeting of the minds.' " *Ray*, supra at 778. Thus, a receipt for premiums may in certain circumstances constitute a binder, provided that the attendant circumstances would lead a reasonable person to conclude such was the parties' intention. *Greene v. Commercial Union Ins. Co.*, 136 Ga. App. 346 (221 SE2d 479); Ga. Auto. Ins. Law, supra.

Applying the legal principles above discussed to the facts of this case, we find that the trial court did not err. No genuine issue of material fact exists either as to the existence of a valid contract of insurance or as to the existence of a binder at the time of appellant's collision. The facts show that there was no meeting of the minds as to these matters, even though an advance payment of premium was made.

We are mindful of Abraham Peterson's testimony that some unknown person informed him that he had insurance coverage apparently before the date of the collision. Giving appellant the benefit of every favorable inference from this testimony, we still conclude that no genuine issue of material fact arises. No inference can be drawn that the person with whom appellant conversed by phone had any particular position of general or limited authority with appellee insurance company. Moreover, even the most favorable inferences to be drawn from appellant Abraham Peterson's testimony would not establish that the person with whom he talked had the specific authority either to issue an oral binder or to approve his pending insurance application by verbal assurances. See *Karp*, supra at 694. Further, the affidavit of the Muscogee County Tax Commissioner and the notation on the insurance application of "Approved by Tim Gramig on 8-15-86" do not raise a genuine issue of material fact. Tim Gramig appears to have held some position in "Personal Underwriting" with the Liberty Mutual Insurance Company. However, no inference can be drawn

that Tim Gramig had the authority either to issue a valid oral binder or to approve and accept the application (offer) of insurance. Id. Additionally, we note that the alleged approval apparently occurred on August 15, 1986 (8-15-86), whereas the evidence in this record conclusively establishes that the application (offer) of insurance was not signed and tendered until August 18, 1986.

Summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and "while there may be some 'shadowy semblance of an issue' [cit.], the case may nevertheless be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion." *McCray v. Hunter*, 157 Ga. App. 509, 511-512 (277 SE2d 795); *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 569 (314 SE2d 241). We are satisfied that the appellee has met the requisite tests required for the issuance of summary judgment to a movant defendant.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 15, 1988.

*David L. Hirsch*, for appellants
*Ray L. Allison*, for appellee.